**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF GEORGIA**

**SAVANNAH DIVISION**

| | | |
|---|---|---|
| TENYIKA SAMS *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. CV415-282 |
| GA WEST GATE, LLC *et al.*, | ) ) ) | |
| Defendant. | ) | |

# **ORDER**

In this Fair Housing Act (FHA) case, plaintiffs contend that their current and former landlords and the City of Garden City discriminated against them on the basis of race. *See* doc. 31. Defendants CHG Westgate, LLC (CHG) and American Apartment Management Company (AAMC)[1] move to dismiss, arguing that plaintiffs fail to state claims. *See* docs. 34-1 & 36. Those motions are before the district judge.

Before the undersigned is CHG and AAMC's motion to stay discovery pending resolution of their motions to dismiss (doc. 39); plaintiffs' motions for leave to file a second amended complaint (doc. 40), and for an extension of time to move to substitute Clyde Campbell for

---

[1] CHG is the current owner of the apartment complex at the center of this FHA storm. Doc. 34-1 at 3. AAMC manages the property for CHG. *Id.*

deceased plaintiff Debra Truell (doc. 68); and defendants' motion for reconsideration of the Court's Order allowing substitution of Jeanine Belalcazar for deceased plaintiff Carmen Rivers. Doc. 71.

I. **BACKGROUND**

After plaintiffs amended their Complaint a first time, CHG and AAMC moved to dismiss (docs. 34 & 36) and to stay discovery. Doc. 39. Three days later, on March 28, 2016, defendant City of Garden City filed a suggestion of death "noting the deaths of plaintiffs Debra Truell and Carmen Rivers . . . *prior to the filing of this suit*."[2] Doc. 37 at 1 (emphasis added). At the same time as they responded to those motions, plaintiffs moved to amend their Complaint a second time. Doc. 40. They said nothing about the deaths of Rivers and Truell until May 3, 2016, when they moved to substitute Jeanine Belalcazar for Rivers. Doc. 57.

The Court granted that motion (doc. 62) without waiting for defendants' response. Shortly thereafter, plaintiffs filed their extension motion regarding Truell (doc. 68) (which defendants oppose, doc. 69) and defendants moved the Court to reconsider its earlier substitution Order.

---

[2] CHG and AAMC had by that point already suggested Truell's, but not Rivers', death. Doc. 23 (filed February 17, 2016). And Garden City, three days before filing its suggestion of death, asserted in its Answer four affirmative defenses related to Rivers' and Truell's deaths. Doc. 35 at 2-3 (filed March 25, 2016).

2

Doc. 71. The Court treats the death-related motions first and then turns to the interrelated motions to stay and amend.

## II. ANALYSIS

### A. Death Motions

Plaintiffs' motion for extension of time to "complete substitution of party" (doc. 68) and defendants' motion for reconsideration (doc. 71) each involve, in slightly different ways, the permissibility of substituting a new party for one who died prior to a multi-plaintiff action's filing. Defendants argue that a deceased person has no legal existence and thus that any suit brought in his or her name is a legal nullity. Doc. 71 at 5. Because of that, they urge, any substitution also is a nullity. *Id.* at 9. The Court's Order allowing substitution therefore is contrary to law and any extension of time to move for substitution moot. *Id.*; doc. 70 at 1.

Disagreeing, plaintiffs highlight that "the *complaint* [they] seek to amend is not void ab initio because all plaintiffs except Rivers and Truell . . . are alive and therefore legally exist." Doc. 75 at 17. Even if Rivers and Truell had no legal existence (and thus no capacity to sue) at its inception, this action -- which indisputably was filed by a group that included living and still-alive plaintiffs -- therefore survives their deaths.

3

*Id.* Coupled with the authority to add or drop parties at any time (*see* Fed. R. Civ. P. 21), that, say plaintiffs, enables the Court to substitute the administrators of the Truell and Rivers' estates. *Id.*

As both parties recognize:

> 'Only a real party in interest has the capacity to bring a lawsuit.' *Tennyson v. ASCAP*, 477 F. App'x 608, 610 (11th Cir. 2012) (citing Fed.R.Civ.P. 17(a), (b)). 'The capacity doctrine relates to the issue of a party's personal right to litigate in federal court.' *Id.* (quoting *Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 670 (11th Cir. 1991), *abrogated on other grounds by Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 963 (11th Cir. 2001)). '[A] party must have a legal existence as a prerequisite to having the capacity to sue or be sued.' *Adelsberger v. United States*, 58 Fed. Cl. 616, 618 (Fed. Cl. 2003) ('The question presented is whether an action can be initiated in the name of a deceased person. We think the answer is plainly, 'no.''). Indeed, a deceased individual cannot be a party to a lawsuit.

*In re Engle Cases*, 2013 WL 8115442 at * 2 (M.D. Fla. Jan. 22, 2013), *aff'd*, 767 F.3d 1082 (11th Cir. 2014); *see also Mathews v. Cleveland*, 159 Ga. App. 616, 617 (1981) ("A deceased person cannot be a party to legal proceedings.").

Truell and Rivers both predeceased this action's commencement. *See* doc. 37 at 1. Neither, then, is, or ever was, a proper party. Their estates' administrators consequently may not be *substituted* as proper parties. *See In re Engle Cases*, 2013 WL 8115442 at * 3 ("[A] personal injury suit cannot be commenced by a dead person and thus, these claims

are nullities that must be dismissed. As such, no substitution or amendment can save these claims."). Were they the only two plaintiffs involved, this case too would be "a mere nullity" and no substitution or addition of parties permissible. *Mathews*, 159 Ga. App. at 617; *see also Banakus v. United Aircraft Corp.*, 290 F. Supp. 259, 260 (S.D.N.Y. 1968) (motion to substitute and amend denied because "[t]he action [was] void at its inception, [and] there were no claims capable of amendment," where plaintiff died approximately thirty-five minutes prior to his attorney filing suit).

Fourteen other plaintiffs joined Rivers and Truell in filing suit, however. And no party suggests those plaintiffs ever lacked the existence or capacity necessary to file suit. Hence, the Complaint carries on without Rivers and Truell. Put differently, their deaths do not undermine the claims of the remaining plaintiffs -- just their own (though not, as discussed below, those of their estates).[3]

---

[3] The cases defendants cite do not suggest a contrary conclusion. In each, the court dismissed the action because the only plaintiffs involved died before its inception. *See, e.g.*, *Destasio v. A-C Products Liability Trust*, 311 F.R.D. 152 (E.D. Pa. 2015) ("[I]n each of these cases the only plaintiffs named in the original complaints died before the complaints were filed on their behalf."); *In re Engle Cases*, 2013 WL 8115442 at * 2 (dismissing 521 individually-filed product liability cases because the individual plaintiffs all predeceased filing). None of the cases involved multi-plaintiff complaints where, as here, fewer than all plaintiffs died before filing suit.

5

The question, with substitution a non-starter, thus becomes: is it proper to now *add* parties? Under Fed. R. Civ. P. 21, a court, "[o]n motion or on its own . . . may at any time, on just terms, add or drop a party." And Rule 20 contemplates joinder of plaintiffs if "they assert any right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[,] and any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Consequently, a "court's decision to permit joinder [under Rule 21] is based on whether the claims of the additional plaintiffs arose out of the same or separate acts or occurrences, whether the party seeking joinder has unnecessarily delayed the proceedings, and whether the nonmovant would be prejudiced by the addition." *Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 98 (S.D.N.Y. 1997) (cites omitted).

Truell and Rivers' claims (regardless of ultimate merit) without question "aris[e] out of the same" set of facts as those of other plaintiffs and involve common questions. *See, e.g.*, doc. 31 at 23-24 ("Rivers [and Truell were] subjected to the same pattern of discriminatory treatment and intimidation suffered by other plaintiffs. . . ."). And defendants

---

Consequently, nothing about those cases suggests that entire complaints must perish because the claims of a few technically never existed. For the same reason, they also do not prohibit adding new parties to replace deceased plaintiffs.

6

won't suffer any prejudice (other than the inherent prejudice of additional liability exposure) from adding two new parties because (1) their claims will mirror those of existing plaintiffs, and (2) this case remains mired in pre-discovery motions machinations. Adding replacement parties for Truell and Rivers therefore is appropriate.

That, in turn, means that reconsideration of the Court's Order substituting Jeanine Belalcazar for Rivers is *in*appropriate. Although it's true that courts cannot substitute for a person who died before filing suit, *In re Engle Cases*, 2013 WL 8115442 at * 3, granting reconsideration here while at the same time approving the addition of new parties would force a pointless exercise: the Court would vacate the substitution of Belalcazar for Rivers (grant reconsideration), then add Belalcazar as a party. The Court will not hop on that inefficient merry-go-round, so it **DENIES** defendants' motion for reconsideration. Doc. 71.

Plaintiffs' extension motion, however, rides a slightly different set of rails. Unlike Rivers, Truell's estate lacks an administrator that could press her claims. Her son apparently filed for letters of administration on May 13, 2016, *see* doc. 68-2 at 2, but they have not yet arrived. Hence,

7

the requested extension of time to move to substitute. *See* doc. 68. In that regard, these plaintiffs note that they sought the extension before Fed. R. Civ. P. 25's 90 day time period expired. *Id*. at 1. They also contend that an extension would not prejudice CHG and AAMC because they "have moved to delay litigation of this action while their motions to dismiss are pending." *Id*. at 2 (cites omitted).

The Court agrees. As discussed above, it is entirely appropriate to add a party whose claims mirror those of other plaintiffs and whose addition imposes no prejudice on defendants. Because an additional slight delay, regardless of whether the Court grants defendants' stay motion, will not meaningfully increase that prejudice or hamper this case's progress, the Court **GRANTS** plaintiffs' extension motion (doc. 68). Plaintiffs have until August 1, 2016 to move to add Truell's estate's administrator as a party. In the meantime, pursuant to Rule 21, the Court removes Debra Truell as a party.

### B. Motion to Amend

"Very few of the Plaintiffs," say CHG and AAMC, "have included any allegations [in the Complaint] with respect to [them], and the ones who have simply have failed to allege facts to support discrimination

8

under the [FHA] and conspiracy pursuant to Sections 1985(3) and 1986." Doc. 39 at 5. They therefore want a stay pending a decision on their motions to dismiss in order to avoid the "substantial and unnecessary harm and expense" from participating in useless discovery. *Id.* at 2.

Plaintiffs, of course, disagree that their Complaint suffers any deficiencies. Even if it does, they argue that "a lack of sufficient factual allegations" is a curable defect and one they "have, in fact, sought to cure" through their motion to amend. Doc. 60 at 4. They also highlight that CHG and AAMC are only two of six defendants and contend that "[w]here a plaintiff pursues multiple interrelated claims against multiple defendants . . . [and] where the defendants will be subject to discovery whether or not their motion to dismiss is granted . . . [that] a stay is not appropriate." *Id.* at 5.

Once the time for "as a matter of course" pleading amendments passes (as it has in this case, *see* Fed. R. Civ. P. 15(a)(1)), a party must ask permission to amend its complaint. *Id.* at (a)(2). Still, courts should "freely give leave when justice so requires." *Id.*

> The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of

9

relief.' *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L.Ed.2d 222 (1962). Nevertheless, a motion for leave to amend may appropriately be denied '(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.' *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

*In re Engle Cases*, 767 F.3d 1082, 1108-09 (11th Cir. 2014).

Neither prejudice nor delay exists here. Although it's true that plaintiffs moved to amend *after* defendants filed their motions to dismiss, that is not a disqualifying delay because discovery has not begun, at least one defendant remains to be served, and there isn't yet a scheduling order set. *See Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001) ("The lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint. *See Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1490 (11th Cir.1989) ("The mere passage of time, without anything more, is an insufficient reason to deny leave to amend."), *rev'd on other grounds*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1990)."). At worst, amendment moots the dismissal motions and renders the time spent drafting them sunk costs.

CHG and AAMC insist that plaintiffs had ample time to investigate their claims. They point to the years between plaintiffs' 2013 HUD complaints (an administrative remedy) and October 2015 initial Complaint; the five months between filing suit and their first amended Complaint; and the months since then.. Doc. 65 at 5-6. Despite that, defendants say, plaintiffs only now, in a third iteration of their Complaint, allege facts tying CHG and AAMC to their claims. *Id.* That, to defendants, is undue delay that caused prejudice. *Id.* at 6 (citing *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999)).

Not so. As noted above, the mere passage of time -- even if years -- does not, absent something more, create prejudice. *Bryant*, 252 F.3d at 1164. Unlike *Campbell*, where the "motions for leave to amend were filed more than one year after discovery had ended, after dispositive motions had been filed, and between five-and-six years after the lawsuits were begun," 166 F.3d at 1162, all that has occurred here is the passage of time (from October 2015 to the present) and the filing of motions to dismiss specific to CHG and AAMC (*i.e.*, their success would not destroy the plaintiffs' entire case). Defendants have spent no resources engaging in discovery, the proposed amended complaint adds no new claims

against any defendant (indeed, it eliminates claims), and allowing amendment will cause no scheduling issues (no scheduling order exists, yet). Under those circumstances, the Court declines to find undue delay or prejudice.

That leaves futility.

> 'When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail.' *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999). The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied. *See, e.g., Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (denial of leave to amend justified by futility when "complaint as amended is still subject to dismissal"); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if cause of action asserted therein could not withstand motion to dismiss); *Amick v. BM & KM, Inc.*, 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003) ("In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss.").

*Seacore Marine, LLC v. C & G Boat Works, Inc.*, 2016 WL 866347 at * 1 (S.D. Ala. Mar. 3, 2016).

That analysis duplicates the one the district judge will conduct when deciding CHG and AAMC's motions to dismiss. And that risks inconsistent decisions if the undersigned finds the amendment

12

worthwhile (not futile), but the district judge then grants the motions to dismiss (*i.e.*, decides it's futile). Because of that inextricable intertwinement, the Court **DIRECTS** the Clerk to unrefer plaintiffs' motion to amend. Doc. 40.

C.  **Defendants' Motion to Stay**

CHG and AAMC's final request is that the Court pause discovery until the district judge decides their motions to dismiss. Doc. 39. Long has the Eleventh Circuit recognized that:

> [f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins. Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true. *See Mitchell v. Duval County Sch. Bd.*, 107 F.3d 837, 838 n. 1 (11th Cir. 1997) (*per curiam*). Therefore, neither the parties nor the court have any need for discovery before the court rules on the motion. *See Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) ("Discovery should follow the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997); *see also SP Frederica, LLC v. Glynn Cty.*, 2015 WL 5242830 at * 2 (S.D. Ga. Sept. 8, 2015) (discovery in mandamus action against municipality stayed pending resolution of nonfrivolous motion to dismiss).

13

As many courts have noted, however, "*Chudasama* does not stand for the proposition that all discovery in every circumstance should be stayed pending a decision on a motion to dismiss. Instead, *Chudasama* and its progeny stand for the much narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount." *Alexander v. Allen*, 2014 WL 3887476 at * 1 (M.D. Fla. Aug.7, 2014) (citations and internal quotations omitted); *accord Jones v. Bank of America Corp.*, 2013 WL 5657700 at * 2 (M.D. Ga. Oct.15, 2013) ("[N]othing in *Chudasama* . . . means discovery should be stayed as a matter of course whenever a defendant files a motion to dismiss."); *Reilley v. Amy's Kitchen, Inc.*, 2013 WL 3929709 at * 1 (S.D. Fla. July 31, 2013) ("[T]here is no general rule that discovery be stayed while a pending motion to dismiss is resolved.").

*S. Motors Chevrolet, Inc. v. Gen. Motors, LLC*, 2014 WL 5644089 at * 1 (S.D. Ga. Nov. 4, 2014). Consequently, when a party seeks a stay pending resolution of a motion to dismiss, a "court must take a 'preliminary peek' at a dispositive motion to assess the likelihood that the motion will be granted. *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (citing *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)); *Arriaga–Zacarias v. Lewis Taylor Farms*, 2008 WL 4544470 at * 2 (M.D. Ga. Oct. 10, 2008). Generally, a stay should be granted only where the motion to dismiss appears, upon preliminary review, 'to be clearly meritorious and truly case dispositive,' *Feldman*, 176 F.R.D. at 652–53 (emphasis added), rendering discovery a mere futile exercise." *Id.*

With plaintiffs' motion to amend still pending, a question arises as to which Complaint -- the first amended or second amended -- CHG and AAMC's motions to dismiss apply. That uncertainty matters a great deal because defendants' arguments pack more punch when applied to the current Complaint than they do with the proposed Second Amended Complaint (SAC). For starters, the SAC drops 42 U.S.C. § 1986 claims (which CHG and AAMC both moved to dismiss, doc 36 at 14; doc. 34-1 at 10) and clarifies which plaintiffs assert claims against which defendant (another motion to dismiss line of attack, *see* doc. 34-1 at 7; doc. 36 at 8). It also addresses defendants' overarching concern -- factual allegations insufficient to state a claim -- by adding new facts specific to CHG and AAMC that are relevant to plaintiffs' disparate impact theory (*see, e.g.*, doc. 40-1 at 39), and "clarifying which discriminatory housing practices plaintiffs allege that CHG [and] AAMC committed." Doc. 40 at 3 (citing doc 40-1 at 43-44).

Taken as true, the allegations in plaintiffs' SAC suggest that CHG and AAMC may indeed have violated the FHA (whether or not all of plaintiffs' claims would survive a motion to dismiss is a different question) and, thus, that their motions to dismiss are no "slam-dunk."

15

*Southern Motors*, 2014 WL 5644089 at * 3. By contrast, the First Amended Complaint's (FAC) claim edifice shows substantial cracks after confronting defendants' arguments. Hence, deciding which Complaint -- the FAC or SAC -- is the operative pleading (*i.e.*, deciding the motion to amend) may well decide the propriety of a stay and the motions to dismiss.

The district judge will make that decision sometime in the future. In the meantime, a motion to stay remains pending. And considerations separate from the merit of CHG and AAMC's motions to dismiss factor into deciding that issue. Plaintiffs point out that, regardless of whether the operative pleading is the FAC or SAC, they "allege that the City of Garden City, working with the owners and operators of the Westgate Apartments, targeted the residents of the apartments for discriminatory evictions. . . . Even if defendants CHG and AAMC prevail on their motions to dismiss, they will still be subject to discovery requests regarding their treatment of plaintiffs and interactions with the City." Doc. 60 at 5. In particular, as "successor landlords . . . [they] would retain . . . tenant files and operations documents maintained by the prior landlords." *Id*. Those documents, say plaintiffs, "are relevant to [their]

claims against the City and" will be sought "from CHG Westgate and AAMC, whether or not they are defendants." *Id.*

Defendants insist that "simply is not true." Doc. 73 at 4. "If AAMC and CHG are dismissed from this case . . . [they] likely will be subjected to only a very small amount of discovery. . . ." *Id.* at 4-5. Because (1) "[p]laintiffs do not need compulsory party discovery to acquire th[o]se documents," and (2) denial of a stay will subject defendants "to very onerous discovery, as this case likely will require expert testimony and heavy reliance on statistics," CHG and AAMC urge the Court to grant their motion. *Id.* at 5.

Both parties make compelling arguments. Staying discovery now only to have CHG and AAMC respond to third-party discovery requests later should the district judge grant their motions to dismiss doesn't make sense. But neither does allowing discovery to proceed if doing so will subject defendants to onerous and expensive evidence development whose necessity the motions to dismiss ultimately moots. Weighing the cost of delaying discovery against the probability that the pending motions will eliminate the need for that discovery, the Court finds that, in this case, the scale tips in favor of a partial stay.

Plaintiffs may propound discovery requests to CHG and AAMC that involve evidence whose relevance is divorced from defendants' status as parties. Put differently, anything that would be a proper subject of a Fed. R. Civ. P. 45 subpoena should CHG and AAMC prevail on their motions to dismiss may be obtained now.[4] Should the district judge ultimately grant plaintiffs' motion to amend and deny CHG and AAMC's motions to dismiss, full discovery may commence.

### III. CONCLUSION

Plaintiffs' motion for extension of time to move for substitution (doc. 68) is **GRANTED**. Plaintiffs have until August 1, 2016 to move to add Truell's estate's administrator as a party. Pursuant to Rule 21, the Court removes Debra Truell as a party. The Clerk is **DIRECTED** to amend the case caption accordingly.

Defendants' motions for reconsideration (doc. 71) is **DENIED**, while their motion to stay discovery (doc. 39) is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs may seek evidence from CHG and AAMC that would be the proper subject of third-party subpoenas were

---

[4] The Court trusts plaintiffs, CHG, and AAMC to confer on precisely what documents and testimony fall within that definition before seeking additional judicial guidance.

defendants not parties to this case. The Clerk is **DIRECTED** to un-refer plaintiffs' motion to amend. Doc. 40. Finally, given the Court's resolution of the motion to stay (which the Rule 26(f) report understandably fails to account for), the parties must confer and submit to the Court a proposed scheduling order within fourteen days of the date this Order is served.

**SO ORDERED**, this __10th__ day of June, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA