IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

TENYIKA SAMS; BRIGITTE BROWN;           )
MARIE DAVIS; TOMEKA DUDLEY;              )
SHANEQUITA FRAZIER; ADRIAN               )
KENNEDY; LESLIE MITCHELL;                )
LORETTA MOBLEY; SHANA ROUSE;             )
NATALIE WALLACE; LATOYA WHITE;           )
JNAI WHITEHEAD; ROSHAUN                  )
WILLIAMS; SAVANNAH-CHATHAM               )
COUNTY FAIR HOUSING COUNCIL,             )
INC.; JEANIE BELALCAZAR; and             )
CLYDE JERRON CAMPBELL;                   )
                                         )
     Plaintiffs,                         )
                                         )      CASE NO. CV415-282
v.                                       )
                                         )
GA WEST GATE, LLC; AMERICAN              )
APARTMENT MANAGEMENT COMPANY,            )
INC.; CHG WEST GATE, LLC; and            )
CITY OF GARDEN CITY;                     )
                                         )
     Defendants.                         )
                                         )



## O R D E R

Before the Court is Defendant CHG West Gate, LLC's ("CHG") Motion to Dismiss (Doc. 34), Defendant American Apartment Management Company, Inc.'s ("American") Motion to Dismiss (Doc. 36), Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 40), Plaintiffs' Motion for Entry of Default against Defendant GA West Gate LLC (Doc. 79), and Plaintiffs' Motion to Withdraw Request for Entry of Default and to Dismiss Defendant GA West Gate, LLC (Doc 85). For the following reasons, Plaintiffs' Motion for Leave to File (Doc. 40) is **GRANTED**.

Defendants CHG and American's Motions to Dismiss (Doc. 34; Doc. 36) are **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' Motion to Withdraw (Doc. 85) is **GRANTED** and Plaintiffs' Motion for Entry of Default (Doc. 79) is **DISMISSED AS MOOT**. Finally, Defendant GA West Gate LLC is **DISMISSED**.

## BACKGROUND

Plaintiffs in this case are tenants and former tenants of the Westgate Apartments in Garden City, and a nonprofit corporation whose goal is the promotion of equal opportunity in housing rental.[1] (Doc. 40, Attach. 1 ¶¶ 5, 6.) Between September 20, 2008 and December 12, 2012, Defendant GA West Gate, LLC owned, operated, and managed the Westgate Apartments. (Id. ¶ 7.) In 2012, however, an individual named Hans Juhle—a principal with Integra Property Group—acquired the Westgate Apartments in order to float a public authority bond.[2] (Id. ¶ 37.) Integra Property Group established the Chisom Housing Group as a non-profit for purposes of the bond, and created Defendant CHG to own the Westgate Apartments. (Id. ¶ 38.) Defendant American operated as the managing agent of the apartments. (Id. at ¶ 8.)

---

[1] For the purposes of this motion, Plaintiffs' allegations as set forth in their amended complaint will be taken as true. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

[2] Plaintiffs' amended complaint contains numerous allegations against various Defendants in this case. However, this order addresses only those claims brought against Defendant CHG Westgate and Defendant American Apartment Management Company.

2

To secure public authority bond financing, Integra Property Group and Defendant American sought Garden City approval to issue the bond. (Id. ¶ 39.) To further that goal, Mr. Juhle met with the Garden City Police Chief and assured him that Defendant CHG would cooperate with police. (Id.) Moreover, Mr. Juhle directed the Westgate apartment's on-site management to meet with the Garden City Police Chief. (Id.)

In addition to seeking approval for the bond and communicating with the Garden City Police Chief, Defendants CHG and American continued to enforce certain restrictions on Westgate tenants put in place by the apartment's previous owners and managers. (Id. ¶ 42.) These restrictions included the enforcement of a 10:00 p.m. curfew, restrictions on the use of the apartment grounds for children's play, and the threat of eviction for violations of these rules. (Id.) Additionally, Defendants imposed a 99-year criminal history rule. (Id. ¶ 44) This rule barred from residency any individual who had certain felony or misdemeanor convictions within the past 99 years. (Id.) The felony and misdemeanor convictions encompassed by the rules included injuries to a person, damage to property, manufacturing or distributing illegal substances, illegal use or possession of any controlled substance, possession of an unregistered firearm or illegal weapon, harm to a child, harm to an animal, or any felony in the past 10 years. (Id.) To enforce

3

this rule, Defendants CHG and American requested that all tenants report to the Garden City police department for a criminal history probe. (See, e.g., id. ¶ 50.) Each Plaintiff in this case complied with this requirement.

In December 2013, Defendants CHG and American began seeking to evict certain tenants because of their criminal history. (Id. ¶ 45.) Plaintiffs Mitchell, Brown, Sams, and Whitehead were served with eviction notices between December 17, 2013 and February 27, 2014. (Id. ¶¶ 45-46.) However, these Plaintiffs fought the evictions and in March of 2014, a state court quashed the eviction proceedings. (Id. ¶ 47.) Despite the lack of successful eviction proceedings, many other Westgate tenants remained fearful that they would be evicted pursuant to the 99-year rule. (Id.)

On October 21, 2015, Plaintiffs filed a complaint against various defendants in this Court. (Doc. 1.) On March 13, 2016, Plaintiffs filed an amended complaint. (Doc. 31.) Plaintiffs claimed that Defendants CHG and American committed discriminatory housing practices in violation of the Fair Housing Act and engaged in a conspiracy to deprive Plaintiffs of equal protection of the laws. (Doc. 31.) On March 25, 2016, Defendants CHG and American filed Motions to Dismiss alleging that Plaintiffs had failed to state a claim against them. (Doc. 24; Doc. 36.) On April 11, 2016, Plaintiffs filed a Response

4

(Doc. 41) to the motions to dismiss and also filed a Motion to Amend or Correct the Amended Complaint (Doc. 40).

**ANALYSIS**

I. <u>DISMISSAL OF DEFENDANT GA WEST GATE LLC</u>

As an initial matter, Plaintiffs have requested that Defendant Ga Westgate be dismissed. (Doc. 85.) Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), a plaintiff may dismiss an action by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Because Defendant GA West Gate has filed neither an answer nor a motion for summary judgment in this case, Plaintiffs' request (Doc. 85) is **GRANTED** and Defendant GA West Gate LLC is **DISMISSED**.[3] See <u>Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.</u>, 474 F.2d 250, 255 (5th Cir. 1973) ("[R]eading the rules governing dismissal by notice and dismissal by motion together, we conclude that it was intended by the rule-makers to permit dismissal against such of the defendants as have not

---

[3] The Court notes that it is possible that Defendant GA West Gate is owned by Defendant AHF, whom was dismissed from this action at an earlier time pursuant to a bankruptcy. However, "the purposes of the Bankruptcy Code [a]re in no way infringed by the dismissal by a plaintiff of a case against the bankrupt without any additional cost or risk to the bankrupt or its creditors." <u>Slay v. Living Ctrs. E., Inc.</u>, 249 B.R. 807, 807 (S.D. Ala. 2000) (quoting <u>Chase Manhattan Bank, N.A. v. Celotex Corp.</u>, 852 F. Supp. 226, 228 (S.D.N.Y. 1994)).

served an answer or motion for summary judgment . . . ").[4] As a result, Plaintiffs' Motion for Entry of Default (Doc. 79) is **DISMISSED AS MOOT**.

II. MOTION TO AMEND

Plaintiffs have requested that the Court grant them leave to amend their complaint in response to Defendants' Motions to Dismiss. (Doc. 40.) Even where the time for filing an amended complaint has passed, Courts may grant permission to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). There has been neither prejudice nor delay in this case such as would justify denying Plaintiffs' motion. See In re Engle Cases, 767 F.3d 1082, 1182-09 (11th Cir. 2014) (explaining that motion for leave to amend may be denied where "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed . . . undue prejudice to the opposing party; or . . . where amendment would be futile"). Moreover, the Court does not find Plaintiffs' amendment futile. As will be discussed further below, Plaintiffs' amendment results in adequate pleading of certain of Plaintiffs' claims against Defendants CHG and American. Accordingly, Plaintiffs' Motion to Amend is **GRANTED**. (Doc. 40.)

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

III. MOTION TO DISMISS

Upon granting Plaintiffs motion to amend, the Court would generally dismiss Defendants' Motions to Dismiss as moot. However, Defendants filed a response to the motion to amend arguing that Plaintiffs' proposed amended complaint still failed to state a claim for relief under Rule 12(b)(6). (Doc. 64.) Accordingly, the Court will review Defendants' Motion to Dismiss as it applies to the Second Amended Complaint. (Doc. 40, Attach. 1.)

A. Standard Of Review

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal v.

Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Sinaltrainal, 578 F.3d at 1268. That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545).

B. Plaintiffs' Fair Housing Act Claims

The Fair Housing Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Plaintiffs allege that they have suffered discrimination in violation of the Fair Housing Act. Specifically, Plaintiffs allege a disparate treatment, disparate impact, and a pattern or practice of discrimination. (Doc. 41, Attach. 1 at 36-47.) They also allege that Defendants conspired

8

with each other to deprive Plaintiffs of equal protection of the laws in violation of 42 U.S.C. § 1985(3).[5] (Id.)

*1. Disparate Treatment and Pattern or Practice Claims*

Defendants GHC and American[6] contend that Plaintiffs' disparate treatment claim must fail because Plaintiffs have not alleged that Defendants engaged in intentional discrimination. (Doc. 64 at 6.) They also request dismissal of the disparate treatment claim because six plaintiffs—Dudley, Frazier, Kennedy, Mitchell, Rouse, and Williams—merely fear that Defendants will evict them although no eviction has yet been attempted. (Id. at 7.) Moreover, Defendants claim that seven plaintiffs—Wallace, White, Mobley, Davis, Rivers, Truell, and the Savannah Housing Commission—do not state any allegations with respect to Defendants.[7] (Id.) Finally, Defendants claim that the Plaintiffs who were subject to eviction proceedings—Brown, Sams, and Whitehead—cannot state a claim because they successfully opposed their evictions. (Id. at 10.)

---

[5] Plaintiffs also allege that Defendant City of Garden City ("Garden City") injured Plaintiffs in violation of 42 U.S.C. § 1983. Defendant Garden City has not filed a motion to dismiss. Accordingly, the validity of that claim is not before the Court at this time.

[6] For purposes of this Order, Defendants CHG and American will be collectively referenced as "Defendants".

[7] Plaintiffs Rivers and Truell have died (Doc. 37) and their estates have been substituted in their place as represented by Jeanie Belalcazar (Doc. 62) and Clyde Campbell (Doc. 93) respectively.

9

Each of these objections fail. As an initial matter, the implementation of actual eviction proceedings is not necessary in order to maintain a claim pursuant to the FHA. See Wells v. Willow Lake Estates, Inc., 390 F. App'x 956, 959 (11th Cir. 2010) (holding that threat of eviction is "a 'realistic danger'" (citing Yesler Terrace Cmty. Council v. Cisneros, 37 F.3d 442, 446-47 (9th Cir. 1994); Richmond Tenants Org. Inc. v. Kemp, 956 F.2d 1300, 1305-06 (4th Cir. 1992))). Accordingly, the fact that certain Plaintiffs were not subject to actual eviction proceedings does not preclude their claims.

Next, the Court will not strike the claims of the three Plaintiffs who were subject to eviction proceedings, but who successfully avoid eviction through legal action. As pleaded, these Plaintiffs allege that they are subject not only to the 99-year prohibition of certain crimes, but also requirement that all Plaintiffs submit to a criminal history review and the implementation of a restrictive curfew. As a result, Plaintiffs allege both that Defendants attempted to "make unavailable or deny[] a dwelling . . . because of race", but also that Defendants "discriminate[d] . . . in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race". In short, the attempted evictions are not the only actions of Defendants that Plaintiffs allege violated the Fair Housing Act. As a result, even those Plaintiffs who successfully

10

avoided eviction through legal action are not precluded from maintaining a Fair Housing Act claim.

Finally, regardless of what the Court believes about the ultimate success of Plaintiffs' claims against Defendants in this case, all Plaintiffs have provided sufficient facts to avoid a motion to dismiss as to their disparate treatment claims. Each Plaintiff has alleged that Defendants CHG and American imposed rules upon the tenants at Westgate that were not imposed at Defendants' other complexes where non-African Americans resided. These rules include prohibitions on the use of public spaces and a 10:00 p.m. curfew. Moreover, each Plaintiff alleges that, because of their race, they were required to submit to a criminal history probe at Defendants request. Accordingly, the Court concludes that Plaintiffs have alleged sufficient facts to maintain a claim for disparate treatment. Defendants' motions to dismiss Plaintiffs' disparate treatment claim are **DENIED**.

*2. Pattern or Practice Claim*

Defendants allege that Plaintiffs have not adequately pled a pattern or practice claim. (Doc. 64 at 12-13.) Specifically, Defendants argue that the pattern and practice allegations in the proposed amended complaint are impermissible shotgun pleadings and are not based on facts in the complaint. (Id.) While the section of the proposed amended complaint devoted to a

pattern or practice claim does repeat examples of discriminatory conduct from Housing and Urban Development regulations, that does not defeat Plaintiffs' claims. What is relevant is whether the Plaintiffs have adequately pled <u>facts</u> supporting their claims. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (<u>citing</u> <u>Bell Atl. Corp.</u>, 550 U.S. at 555). As discussed above, Plaintiffs have pointed to numerous—and specific—examples of allegedly discriminatory conduct by Defendants against various Plaintiffs. Plaintiffs reference the imposition of rules prohibiting the use of public spaces, imposing a curfew, and requiring all residents to undergo a criminal history probe. Plaintiffs argue that these actions were not imposed on other non-minority apartment complexes owned and operated by Defendants and allege that each of the individuals subject to these rules were African American. Considering these facts as alleged, <u>see</u> <u>Sinaltrainal</u>, 578 F.3d at 1260 (11th Cir. 2009), Defendants' motions to dismiss Plaintiffs' pattern or practice claim are **DENIED**.

    *3. Disparate Impact Claim*

Plaintiffs allege that Defendants have discriminated against them because their policies disparately impact African Americans. (Doc. 40, Attach. 1 ¶ 93-96.) Defendants allege that this claim must fail because Plaintiffs have failed to meet the heightened pleading standard for disparate impact claims. (Doc. 64 at 10.) Disparate impact cases challenge practices

12

"that have a 'disproportionately adverse effect on minorities'" and are otherwise unjustified by a legitimate rationale." Tx. Dept. of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., ___ U.S. ___, 135 S. Ct. 2507, 2513 (2015) (citing Ricci v. DeStefano, 557 U.S. 557, 577 (2009)). In Inclusive Communities, the Court held that "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity. A robust causality requirement ensures that "[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create." Id. at 2523 (citing Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 653 (1989)). Accordingly, "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." Id. at 2523.

In this case, the Court concludes that Plaintiffs have proffered sufficient evidence to survive a motion to dismiss. Plaintiffs have provided evidence that African Americans are twice as likely to have criminal convictions as are caucasians. (Doc. 40, Attach. 1 ¶ 93.) Plaintiffs have also alleged that in 2014, African Americans represented 36% of the prison population in the United States but only 12% of the country's total

population. (Id.) As a result, Plaintiffs argue that Defendants' 99-year criminal history policy adversely affects African Americans because it adversely applies to Defendants' African American tenants. This is sufficient to avoid a motion to dismiss. Accordingly, Defendants' motions to dismiss are **DENIED** with respect to Plaintiffs' disparate impact claim.

C. Plaintiffs' Conspiracy Claim

Defendants contend that Plaintiffs have failed to state a claim for conspiracy pursuant to 42 U.S.C. § 1985(3) because Plaintiffs have failed to allege an agreement. (Doc. 64 at 15.) As the Eleventh Circuit has recognized:

> The core of a conspiracy claim is an agreement between the parties; thus, where the plaintiff fails to allege an agreement, the pleading is deficient and subject to dismissal. Bailey v. Bd. of Cty. Com'rs of Alachua Cty., Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). Furthermore, where a plaintiff merely alleges "conclusory, vague, and general allegations of conspiracy," dismissal of the conspiracy claim may be proper. Kearson v. S. Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985).

Mickens v. Tenth Judicial Circuit, 181 F. App'x 865, 876 (11th Cir. 2006). Accordingly, Plaintiffs in this case must plead some facts that if taken as true, "suggest than an agreement was made." Bell Atlantic, 550 U.S. at 556. Here, the Court concludes that Plaintiffs have not met the required pleading standards to assert a § 1985(3) claim against these Defendants.

14

Taken as a whole, Plaintiffs have alleged that Defendant American met with Defendant Garden City's police chief while Defendant American was seeking city approval for public authority bond financing. (Doc. 41, Attach. 1 ¶ 39.) Plaintiffs characterize this meeting as an "agreement" and argue that "pursuant to their agreement to cooperate with the City police, CHG Westgate and [American] threatened to evict Westgate tenants under a newly-invented, more draconian criminal history rule, which remains in force today." (Id. ¶ 42.) However, Plaintiffs have put forth no factual allegations suggesting the presence of an agreement between Defendants American, CHG, and City of Garden City to discriminate against Plaintiffs on the basis of race.

First, Plaintiffs point to a meeting that occurred within the context of seeking city approval for a bond. Plaintiffs merely allege that Defendants CHG and American met with the city's police chief and assured him that they would "cooperate with the police." (Id. ¶ 39.) Nothing about this statement provides any factual allegation in support of a conspiracy to discriminate. Second, Plaintiffs point to certain actions Defendants CHG Westgate and American took while operating Westgate Apartments, namely implementing a 99-year criminal history rule to evict certain tenants and requiring tenants to submit to a criminal history background check. Plaintiffs argue

15

that these actions indicate that the three Defendants discussed above agreed to discriminate against Plaintiffs on the basis of race. However, these actions are just as likely to have been taken independently as they are to have been taken in concert. Much like the alleged conspiracy in Bell Atlantic, these allegations simply fail to provide "plausible grounds to infer an agreement." Accordingly, Defendants' motions to dismiss the § 1985(3) claim are **GRANTED** and Plaintiffs' claims pursuant to § 1985(3) are **DISMISSED** as to Defendants CHG and American.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File (Doc. 40) is **GRANTED**. Defendants CHG and American's Motions to Dismiss (Doc. 34; Doc. 36) are **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' Motion to Withdraw (Doc. 85) is **GRANTED** and Plaintiffs' Motion for Entry of Default (Doc. 79) is **DISMISSED AS MOOT**. Defendant GA West Gate LLC is **DISMISSED**. This case will proceed to discovery.

SO ORDERED this 30th day of January 2017.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA